IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDWARD T. STOLBA, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | Magistrate Judge |
| ROCKWELL, INC., d/b/a ROCKWELL, ) | |
| LLC, ) | Jury Demand |
| ) | |
| Defendant. ) | |

## COMPLAINT

For his Complaint against Defendant RockWell, Inc., d/b/a RockWell, LLC ("Defendant"), Plaintiff Edward T. Stolba ("Mr. Stolba") states:

### PARTIES

1. Mr. Stolba is a citizen and resident of Franklin, Tennessee, and a former employee of Defendant.

2. Defendant is a Utah corporation with its principal place of business at 786 West 1200 North, Suite 5, Springville, Utah 84663. Defendant may be served with process through its owner and CEO, Vaughn Cook, 786 West 1200 North, Suite 5, Springville, Utah 84663.

### JURISDICTION AND VENUE

3. This is an action for equitable relief and damages for unlawful employment practices brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), and the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 ("TDA"). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343(a)(4), and 1367(a). Venue is proper under 28

U.S.C. § 1391 as Mr. Stolba lived and worked for Defendant in Franklin, Tennessee, and Defendant conducts business and sells its products throughout the United States, including within the Middle District of Tennessee.

4. Mr. Stolba has met all conditions precedent to the filing of this Complaint. He timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 21, 2022, an Amended Charge of Discrimination on December 8, 2022. The EEOC mailed him a Notice of Right to Sue on January 10, 2023.

## FACTS

5. Mr. Stolba is a 75 year-old male who worked for Defendant as a Regional Sales Manager from or about September 12, 2012, until it discharged him on or about August 1, 2022.

6. Mr. Stolba was qualified for his job with Defendant and performed it in an outstanding manner.

7. During his employment, Mr. Stolba developed and substantially grew Defendant's East Territory and added numerous distributors that it did not previously have.

8. Mr. Stolba further exponentially increased Defendant's sales with respect to the few distributors that it did have when he took over its East Territory.

9. Throughout his employment, Mr. Stolba never received any performance improvement plans, negative performance reviews, or disciplinary action from Defendant.

10. All of Defendant's salespersons had quarterly and annual sales and goals reviews and plans for increasing sales and profits.

11. Prior to Mr. Stolba's discharge, Defendant gave no indication that his job was in any jeopardy. He was happy working in his position, productive, and earing money for the company and for his family.

12. As of the time of his discharge, Mr. Stolba was continuing to produce over $1 million per year in sales for Defendant.

13. While his base salary was $70,000 in 2022, Mr. Stolba earned $113,000 from Defendant in 2021 based upon his excellent job performance.

14. Further, as of the time that Defendant discharged him, Mr. Stolba's 2022 sales were exceeding his 2021 sales.

15. Additionally, Mr. Stolba would have received a longevity bonus of $4,000 toward a vacation of his choosing for his 10 years of service in the fall of 2022 had Defendant not discharged him effective August 1, 2022.

16. Over the last few years of his employment, Defendant's owner/CEO, Vaughn Cook, repeatedly asked Mr. Stolba "how much longer" he planned to work "given [his] age" or "at [his] age."

17. Mr. Stolba responded to Mr. Cook that as long as he was able to be productive and make money for the company, he wanted to continue working for it.

18. When he discharged Mr. Stolba, Mr. Cook was aware that Mr. Stolba had no plans to retire.

19. Mr. Stolba wished to continue working for Defendant for at least 3 to 5 more years after 2022.

20. Nevertheless, in a July 29, 2022, videoconference, Mr. Cook abruptly terminated Mr. Stolba's employment and career "effective immediately."

21. Mr. Cook terminated Mr. Stolba's employment without prior notice, warning, or opportunity to cure any alleged issues (there were none).

22. Mr. Stolba was shocked and stunned at Mr. Cook's announcement that he was terminating his employment.

23. In addition to discharging him, Mr. Cook stated in an August 1, 2022, termination letter to Mr. Stolba, "We remind you that you have signed a Non-compete, Non-solicitation, and Non-disclosure agreement that continues in force, even after termination. We will expect that you will adhere to the terms of that Agreement and your commitment thereunder."

24. Defendant's insistence on enforcing its non-compete agreement adversely impacts Mr. Stolba's ability to obtain other work in the industry in which he has worked for over 40 years and effectively ends his career.

25. Mr. Stolba is also an otherwise qualified individual with a disability within the meaning of the ADA and the TDA.

26. Defendant knew that Mr. Stolba had osteoarthritis in his knees and that his conditions necessitated medical treatment and knee replacement surgery during his employment with it.

27. Mr. Stolba's impairment substantially limited him in one or more major life activities, including walking, climbing, kneeling, squatting, and bending. He had a record of impairment and Defendant knew of and regarded him as having an impairment.

28. Notwithstanding his physical impairment, Mr. Stolba could fully perform the essential functions of his job and other jobs with Defendant, with or without reasonable accommodation.

29. Defendant represented to the EEOC that Mr. Cook's repeatedly asking Mr. Stolba how much longer he planned to work "was related to [his] health," that "Mr. Stolba had struggled to walk any distance at all as reflected at various conferences and shows," and that "Mr. Cook had

4

an absolute right to determine whether or not Mr. Stolba could perform the essential functions of the Regional Sales Manager position."

30. Defendant's representations to the EEOC demonstrate that it regarded Mr. Stolba as having an impairment, repeatedly asked him how much longer he intended to work based upon its erroneous perception of his impairment, and discharged him because of a disability or a perceived impairment.

31. Defendant's stated reason for discharging Mr. Stolba—that "the position of Regional Sales Manager is one of those that is being eliminated"—was false and a pretext for age and/or disability discrimination.

32. According to Defendant's website even after it discharged him, Mr. Stolba's former position of Regional Sales Manager–East had not been eliminated but had been given to a substantially younger, nondisabled employee, Jim Roark.

33. Further, while Defendant did lay off some of its production and corporate employees, other than Mr. Stolba, it did not discharge any other sales employee at or near the time that it discharged Mr. Stolba.

34. Additionally, only one of the production employees discharged had near the longevity with the company that Mr. Stolba had. The vast majority of the discharged production employees had been employed by Defendant for less than three years and approximately half of them had been employed one year or less.

35. When it discharged him, Defendant did not provide Mr. Stolba any list of the job positions and ages of employees being discharged and retained.

36. Defendant treated Mr. Stolba differently and less favorably in the terms, conditions, and privileges of employment than similarly situated, substantially younger employees who were not disabled within the meaning of the ADA and the TDA.

37. Indeed, Defendant retained each of its other three Regional Sales Managers, each of whom is substantially younger than Mr. Stolba (each is in his early 40s) and nondisabled, and at least two of whom are substantially less experienced in the egress window wells market and not as qualified for the job as Mr. Stolba.

38. At the time of his discharge Mr. Stolba had over 40 years' experience in the relevant industry. He could have effectively managed a mixture of territories for Defendant, as well, but was not offered the opportunity to do so.

39. Further, Defendant retained three substantially younger nondisabled sales employees in its Great Lakes and Midwest Regions, which was previously effectively managed by one employee.

40. One of the retained individuals, Josh Sekic, who was 23 years old and had been hired full-time only approximately one year before Mr. Stolba's discharge, was in a redundant and unnecessary "Field Sales Representative" position that Defendant created for him.

41. No Regional Sales Manager other than Mr. Roark had an intern or assistant such as Mr. Sekic created for him. Mr. Sekic made several trips into Mr. Stolba's former sales territory.

42. Mr. Stolba could have successfully performed in sales support and other sales roles but, unlike Mr. Sekic and others, Defendant gave him no opportunity to do so.

43. Mr. Stolba had also advised Mr. Cook in their July 29, 2022, videoconference that he was willing to take a reduction in his base salary in order to remain employed with Defendant.

44. Mr. Cook declined Mr. Stolba's offer to accept a reduced salary and discharged him without further discussion.

45. As described above, Defendant discriminated against Mr. Stolba in the terms, conditions, and privileges of employment, discharged him, and failed and refused to retain him in any capacity because of his age, 75, in violation of the ADEA and the THRA.

46. As described above, Defendant discriminated against Mr. Stolba in the terms, conditions, and privileges of employment, discharged him, and failed and refused to retain him in any capacity because of a disability and/or a perceived impairment, in violation of the ADA and the TDA.

47. Defendant's conduct as described in this Complaint was willful, malicious and/or recklessly indifferent to Mr. Stolba's federally protected rights.

48. As a direct result of Defendant's discriminatory conduct, Mr. Stolba has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

**RELIEF REQUESTED**

WHEREFORE, Mr. Stolba respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

4. Front pay and damages for lost benefits;

5. Liquidated damages;

6. Punitive damages;

7. Attorneys' fees, costs and litigation expenses;

8. Prejudgment interest and, if applicable, post judgment interest; and

9. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (TN BPR No. 19112)
Law Office of Douglas B. Janney III
5115 Maryland Way
Brentwood, Tennessee 37027
(615) 742-5900
doug@janneylaw.com

Attorney for Plaintiff